SAVOY, Judge.
Plaintiff has appealed to this Court from an adverse judgment rendered against him in the district court. He filed this suit against Griffith Rental Tools, Inc. and its insurer, The American Mutual Liability Insurance Company. For a cause of action, plaintiff alleged that on May 7, 1962, Thomas Touchet, employee of Griffith, was operating a Chevrolet winch truck belonging to Griffith, and while in the process of unloading oil field equipment from said truck to a casing platform on property belonging to Mobil Oil Company, he backed his truck, striking and seriously injuring plaintiff.
Plaintiff alleged the accident was due solely to the negligence of Touchet in failing to observe plaintiff through the rear view mirror of his truck before backing; in failing to observe plaintiff through the rear window of the truck; in failing to pull his truck forward once he discovered plaintiff’s peril; in failing to execute the proper truck maneuver once he was aware of plaintiff’s danger.
*394 Defendants filed a general, denial; and further answered the suit by stating that Touchet was not negligent, but, on the contrary, plaintiff was grossly negligent in placing himself in a dangerous position; in acting as a volunteer when not requested to do so; in stepping behind the truck at a dangerous time and placing himself in a dangerous position; in failing to warn Touchet of his presence; in failing to heed the warning of the other bystander, U. W. Stansbury; in failing to keep a proper look-out; and in failing to do and see what he should have done and seen under the circumstances.
Travelers Insurance Company filed a petition of intervention as the compensation carrier of plaintiff, asking for reimbursement for compensation and medical payments made to date and any further payments which it may make should plaintiff recover against defendants.
Defendants filed a third-party petition against Socony Mobil Oil Company, Inc., alleging that if it should be found that plaintiff was not negligent in the instant case then Socony should be held responsible to it for any sums it might have to pay to plaintiff because of the negligent acts of its agent, U. W. Stansbury, which acts of negligence are particularized in the petition. Socony filed an exception of no cause of action which was sustained by the district court.
Intervenor has not appealed in the instant case, nor has the third-party plaintiff.
The record reveals that on the date of the accident, plaintiff was President and an employee of Dixie Rental Tools, Inc. Mobil Oil Company, a subsidiary of Socony Mobil Oil Company, Inc., was a customer of Dixie Rental Tools. On the morning on which the accident occurred, plaintiff made a luncheon engagement with Mr. Stans-bury, an employee of Mobil Oil. Stans-bury informed plaintiff that he had to be at the Mobil yard in Iowa/Louisiana, around noon for the purpose of meeting a truck driver who was to deliver some equipment to the yard. Plaintiff and Stansbury went tó the Mobil yard and were met by Touchet, employee of Griffith, who was in a Chevrolet truck owned by Griffith. Stansbury instructed .Touchet where to unload certain small tools. After this was completed, Stansbury told Touchet to unload the “Spider”, which is used in casing setting operations and which weighs between 700 and 800 pounds, on a certain platform. There is some conflict between the witnesses as to what occurred thereafter. The trial judge made the following finding of fact:
“ * * * Mr. Stansbury walked over to the platform to which the truck was proceeding and as the truck pulled ahead in order to back up to the platform, Mr. Stans-bury who was located on the driver’s side was approximately 3 or 4 feet from the door of the driver. The driver started backing his truck toward the platform and was observing the platform and the spider through his left rear view mirror located on the outside of the driver’s door. This mirror is a “Gulf Coast” type truck mirror and is such that approximately half of the bed of the truck may be observed through this mirror. As the truck approached the platform the truck was stopped suddenly for the purpose of forcing the spider to slide backwards and off onto the platform. The truck was equipped with an 8 inch roller extending along the entire end of the bed which facilitated the backward movement of the spider when the truck came to a sudden halt. The spider proceeded partially off of the truck and partially upon the platform. The truck driver then pulled ahead 2 or 3 feet, the distance necessary to let the spider drop off of the end of the bed of the truck with the intention of using the end of the bed to push the spider further onto the platform thereby completing the unloading operation. As the truck driver pulled forward two feet or so to complete his proposed maneuver and after he had put the truck into reverse gear, Mr. Ma-hony suddenly walked in between the truck and platform for the purpose of unhooking *395 the winch line which was attached to the spider. He stepped in between the platform and the truck approaching this area from the opposite side of the driver. Mr. Ma-hony could not be seen through the mirror used by the driver for the purpose of observing the operations. Mr. Stansbury, who was standing outside the truck on the driver’s side, did not see Mr. Mahony step in between the truck and the platform. As the truck started backward it caught Mr. Mahony between the roller on the end of the truck bed and the platform and it was not until the truck had actually struck Mr. Mahony, squeezing his body between the truck and the platform that Mr. Stansbury saw Mr. Mahony’s predicament. Mr. Stansbury began to yell loudly telling the driver to pull forward when he saw Mr. Mahony’s situation. There is some dispute as to whether the truck rolled or rocked back against Mr. Mahony the second time as the driver attempted to move off away from him or whether the driver was successful in getting it away from him without rolling back against him the second time. The truck was pulled forward and Mr. Mahony given medical attention and sent to the hospital.
“Mr. Mahony testified that during these operations he had walked over to the truck from the car that he had ridden to the yard in and was standing on the side opposite the driver as the driver started the unloading procedure. He did not inform the driver of his presence, nor did he in any way let the driver know that he was participating in assisting the driver for the unloading procedure. He testified that he walked directly from the side of the truck around the end of the bed and between the bed and the platform when the truck pulled forward. Mr. Mahony obviously determined for himself that the truck driver intended to unhook the winch line and voluntarily stepped in to do so without any notice to the truck driver. The truck driver testified that it was not his intention to unhook the winch line at this point in the operations but he intended to unhook the line after he had completely put the spider upon the platform. Mr. Stansbury, Mr. Mahony and the truck driver were the only three witnesses at the yard at the time of the accident and all testified that the procedure proposed by the truck driver was normal and customary in the unloading of- this type of equipment. All of them had been .in the oil business and around this type of equipment for many years and all were very familiar with the unloading procedure and all agreed that there was nothing unusual about the method that the truck driver used or proposed to use in the unloading of this spider. ^ ‡ H4 i}
Counsel for appellant contends that the trial judge was in error in the following particulars: (1) that he misapplied the facts in that the statement signed by Touchet is inconsistent with his testimony on the trial of this case in that Touchet originally stated he backed his truck twice whereas at the trial he stated he backed it only one time; and (2) that the trial judge was in error in relying on the doctrine of sudden emergency rather than that of last clear chance.
In a reply brief counsel for appellant states that the case of Lynch v. Cities Service Refining Corp. (La.App., 1 Cir., 1951), 52 So.2d 456, cited by the trial judge in his opinion, is distinguishable from the instant case for in the Lynch case, supra, the facts did not establish that defendant actually should have discovered plaintiff’s peril, and the doctrine of last clear chance was not applicable; whereas in the instant case the doctrine should be applied for the record establishes that Touchet could have seen Mahony had he observed through the right rear mirror of his truck; and that this doctrine is applicable even if this Court should find as the trial judge did that Touchet backed his truck only once, and that plaintiff suffered only one trauma.
Since we conclude that the plaintiff was contributorily negligent in leaving a place of safety and placing himself in this *396 position, of great danger, particularly since he was in the oilfield equipment business himself and knew the procedure which they were using to unload the spider, we do not think that the Lynch case, supra, is applicable to the facts in the instant case.
The last contention advanced by counsel for appellant is that plaintiff should recover under the doctrine of last clear chance.
In Breaux v. Meyers (La.App., 3 Cir., 1961), 132 So.2d 77, this Court held that three elements are necessary to recover under the doctrine of last clear chance, namely:
“ 1 “ * * * (a) plaintiff in a position of peril of which he was unaware of unable to extricate himself; (b) defendant in a position where he actually discovered, or shotdd have discovered, the plaintiff’s peril; (c) at such time that the defendant could have by the exercise of reasonable care, avoided the accident. * * * ”
The record is to the effect that plaintiff was attempting to help Touchet; that Touchet had no reason to believe that plaintiff was in the immediate vicinity of the truck being driven by Touchet; Touchet’s attention was directed toward Stansbury who was helping him in the backing-up operation; and that plaintiff was experienced in oilfield operations such as that described herein.
This Court is of the opinion that the second element mentioned in the Breaux case, supra, for the last clear chance doctrine to be applicable, is missing, namely: (b) defendant in a position where he actually discovered, or should have discovered, the plaintiff’s peril. There was no occasion for him to look to the right or rear. He also testified that in the backing-up operations, he would place the tools where he was directed without the help of anyone.
We are of the opinion, as was the trial judge, that the emergency and resulting accident was caused solely by the negligent though good-intentioned act of the plaintiff.
For the written reasons assigned, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.